[No. 1782.]
LEMMON v. SIBERT.

1. CONTRACTS—WRITTEN AND PAROL—LEASES.
Where a herd of sheep was delivered to lessees under a parol contract
of lease which was afterwards reduced to writing and signed, the
number recited in the written contract as the number of sheep de-
livered is not absolutely conclusive, but it may be shown by oral
evidence that a different number were delivered.

2. CONTRACTS—LEASES—EVIDENCE.
Where a herd of sheep was leased by the owner to two parties, which
by contract between the lessees was to be herded and cared for by
one of the lessees, and the lessor bought the interest of the lessee
in charge of the herd before the lease expired, and the sheep were
redelivered to the lessor, the delivery of the sheep to the owner
was a termination of the lease so far as the lessee delivering them
was concerned; and in an action by him against the owner, it was
proper to reject evidence offered by defendant as to management
and control of the sheep after they were redelivered to him.

3. PRACTICE—INSTRUCTIONS—EVIDENCE—OBJECTIONS—WAIVER.
Where evidence is admitted without objection in support of an issue,
and the issue is submitted to the jury by the instructions without
objection or exception, the adverse party by failing to object to
the evidence and instructions waives his objections, and cannot
afterwards complain.

4. PRACTICE—PLEADING—CONSTRUCTION OF CONTRACT—WAIVER.
Where in an action on a contract the defendant by his answer construed
the contract according to plaintiff's contention, and tendered an
issue, and permitted evidence to be introduced and the court to
instruct the jury concerning the issue without objection, he can-
not afterwards complain of the construction placed on the contract.

5. CONTRACTS—LEASE—SURRENDER—CONSIDERATION.
Where the owner of a herd of sheep leased them to two parties, and by
agreement between the lessees one was to herd and care for the
sheep and receive a compensation for his service from the other,
and before the lease expired, the lessor bought the interest of the
lessee in charge of the sheep, and the sheep were redelivered to
the lessor, he agreeing to pay such lessee the amount due him as
wages from his colessee out of any money that might be due the
colessee on the original contract of lease, the surrender of the
lease and abandonment by the lessee of his rights to the herd for
the lessor's benefit was a sufficient consideration for the lessor's
promise to pay, and if upon settlement anything was due the co-
lessee, the lessor was bound by his promise.

6. APPELLATE PRACTICE—VERDICT.

Where the evidence is conflicting and there is nothing to indicate that the verdict resulted from prejudice or bias, and there is evidence to support the verdict, it will be sustained on appeal, notwithstanding the court might have reached a different conclusion had it been called upon to pass upon the facts.

*Appeal from District Court of Morgan County.*

Mr. JAMES E. GARRIGUES, for appellant.

Mr. W. A. HILL, for appellee.

BISSELL, P. J.

A protracted and attentive examination of this record brings to our attention no error which would justify a reversal. We were left in doubt about the justness of the verdict by the first perusal of the evidence and re-read it, and were then, and now are still uncertain about the basis on which it rests. But the jury are such complete masters of this matter that we are not at liberty when there is a conflict in the testimony to put our judgment against their conclusion.

The fabric constructed by the appellant is not only bottomed on the theory that the verdict is unsupported by the evidence but every story of it is constructed out of some argument deducible from the facts. We shall therefore do little more than suggest our conclusions, believing that we are under no obligation to support, or to attempt to sustain the verdict by a discussion of the evidence. It is enough that the verdict was rendered against the appellant, and to state that there is testimony to be found in the record on which it could be based.

We shall make no attempt to follow the counsel in his discussion of the appeal. He has subdivided his argument into several propositions which he treats as a separate discussion of divers particular causes of action which he claims are set up in the complaint. With this we do not agree. Though

the complaint is apparently thus constructed, and the items of Sibert's damage are apparently assigned to various breaches and result in a statement analogous to a plea of different causes of action upon independent statements of fact, we remain of the conviction that its true construction will assign it the character of a complaint, alleging the plaintiff's right to recover on the breach of a single contract.

In October, 1895, Lemmon owned a lot of sheep then running in one of the northern counties. About that time he made an agreement with Madden and Sibert, the substantial effect of which was to lease the herd to these two parties jointly. By the terms of the lease they were to be run in Morgan county and were subsequently delivered to them. The agreement was originally in parol and the sheep were delivered prior to the execution of the writing. It was subsequently written out and signed by the parties. According to its terms Lemmon delivered to Madden and Sibert some 2,528 head of sheep of certain specified ages and descriptions. The parties are agreed the lease did not recite the exact number of lambs delivered under the lease, but it was understood that the sheep were received as delivered according to the terms of the agreement. Under the arrangement between Lemmon and these parties, Madden and Sibert were to herd and run the sheep and care for them for two years and receive as their compensation all the wool of the lambs, half the wool of the aged sheep and one half of the increase. There was an independent arrangement between Madden and Sibert that Sibert should act as the herder of the sheep, care for them according to the duties ordinarily placed on herders, and for this the lessees agreed between themselves that Sibert should receive $15.00 per month, being half wages, to be paid by Madden probably out of his presumed or expected profits. As stated the sheep were turned over and remained in Sibert's possession as herder until the 3d of June, 1896. The lessees did not agree, each insisting that the other had failed to observe his agreement, and disagreeing also with respect to some acts of Madden

with respect to the herd.    We deem it unnecessary to refer to
the exact grounds of the disagreement or to Lemmon's theory.
At all events matters continued until the 3d of June, 1896,
when the sheep were turned over by Sibert to Lemmon who
took them under an agreement which they made, substan-
tially that Sibert transferred and assigned to Lemmon all in-
terest he had in the sheep leased to Madden and himself, and
agreed to let him run the sheep without any interference and
for the best interests of all parties.    Lemmon agreed to care
for the sheep to the best of his ability and return to the les-
sees their just dues, according to the tenor of the lease.    He
also agreed to see that Sibert received out of Madden's share
in the lease the amount due him for his wages; the settle-
ment to be made by October 1, 1896.    It will be observed
that the lease was practically ended so far as concerns Sibert's
management or control of the herd and its further disposi-
tion.    Lemmon thereupon took the sheep, turned them over
to another party in Nebraska, who ran them until October;
had the sheep sheared, sold all the wool and kept all the in-
crease of the herd which amounted to about one thousand
lambs.    According to the agreement Madden and Sibert
were entitled to half of those lambs and half the value of the
wool, subject to one deduction.    By the terms of the original
agreement Madden and Sibert undertook the care of the herd
and agreed to return the whole number of sheep received,
becoming by the terms of their contract absolute guarantors
against loss.    This is the proposition about which the parties
are in hopeless conflict.    One insisting on the loss of more
than 400 and the other on the loss of a much less number;
one side insisting that many were lost, and the other con-
tending that there was no loss except the natural and inevi-
table loss which was the ordinary percentage of diminution
from a herd of that size.    The parties disagree about the
number of sheep delivered; one side contending that the
exact number specified in the lease were sent, and the other
that there was a less number actually delivered.    We do
not regard this as a matter of error because originally the

contract was a verbal one and the sheep were delivered and received prior to the time the written agreement was entered into, and although it may recite a particular number, yet if in point of fact a less number was delivered, we see no reason in the law why the lessees would not be permitted to show it. Ordinarily they could not offer such testimony, and it is, of course, very persuasive and almost controlling with respect to the matter of number and casts more than the usual burden on the plaintiff to show the mistake. When, however, it transpires that they originally agreed by parol, that the sheep were counted and delivered before the agreement was executed, we do not believe that its recital is of necessity absolutely controlling and cannot be varied by proof.

During the progress of the trial, the defendant offered some testimony regarding the management and control of the sheep after June 3, 1896, when they had been redelivered to him and after Sibert had assigned and transferred all of his interests in the lease. The court not only excluded the testimony, but stated in the presence of the jury that it was a matter of no consequence what was done with the sheep after the 3d of June, 1896. The appellant insists this was error. To the proposition we cannot assent. As we read the agreement, it was a transfer by Sibert of all his interests in the lease, and he thereafter had no interest in the herd or in its management or control, was entitled to no compensation regarding it, but was simply to receive twenty-five per cent of the value of the increase, twenty-five per cent of the value of the wool of the aged part of the flock, and fifty per cent of the wool of the lambs, subject to whatever deduction Lemmon was entitled because of the losses against which the lessees had contracted. It seems to us that by the terms of the assignment, he transferred all his interests in the lease, and thereafter had no concern about it or in it. The remark of the court was entirely in harmony with our views of the proper construction of the agreement and the appellant was not prejudiced thereby.

We see no force in the point urged by the appellant that the court ought not to have sustained the objection to the testimony about an agreement with Madden by which the sheep were taken to Nebraska. The lease was terminated and whether the testimony was or was not admissible, it worked no harm to the appellant because Sibert's rights were to be measured and determined by the conditions existing when the transfer was made and the lease abandoned.

Some argument is based on the contention that there was no legal contract which would bind Lemmon to pay Sibert out of Madden's share or interest in the lease, the wages due him under the agreement between the lessees. The jury were instructed that if they found there was anything coming to Madden, Lemmon was bound to pay it, and could not refuse to pay because Madden in some other and independent contract owed him some money. This the appellant contends was error. The answer to the proposition is, the court instructed the jury on this hypothesis without objection. By his consent the issue was submitted to the jury and failing to object or to except to the instruction or to the testimony about it, he cannot be heard to complain. Aside from this consideration there is another proposition springing from the pleading wherein the defendant by his answer construed the contract according to the plaintiff's contention. It being a matter of debate what the proper construction of it was, it might well be said that when the defendant tenders an issue on the subject, alleges a construction in accordance with his view, he cannot afterwards be heard to contend there was no issue concerning it and no evidence ought to have been introduced about it. The defendant denied that he unconditionally guaranteed the wages, but he averred he agreed to pay them out of any amount coming to Madden from his interest in the lease on final settlement. He then alleged there was nothing coming to Madden and draws a legal conclusion that therefore he was under no legal liability. When he avers that this is the true construction of the agreement we are quite inclined to accept his construction and his plea,

and when he permits evidence to be introduced and the court to instruct the jury concerning it, without objection, he cannot complain. This was the evident purpose and object of the assignment. The surrender of the lease by Sibert and the abandonment of his rights to the herd for Lemmon's benefit seems to us to furnish a sufficient consideration for his agreement to pay and he must respond, providing there is evidence to show that on settlement of the herd account there was anything coming to Madden out of which Sibert's wages could be paid. This was submitted to the jury.

We discover no other assignment of error or position taken in the argument to which reference need be made, save the last, which is really the burden of the whole of them, that the verdict is against the weight of the evidence. The appellant's counsel seeks to escape the force of the general rule which gives the verdict of the jury obligatory force in this court on the theory that it was the result of bias, mistake or misapprehension. He proceeds to recite all the exceptions to the rule which in the various opinions of the two appellate courts have been stated. Giving to all of them due weight and due consideration, we are very frank to say that we are unable to see that this case is brought within any of these well supported exceptions. Frankly, as we read the testimony, we doubt whether we should have rendered the same verdict providing it impressed us when delivered by the witnesses as it impresses us now when we read it in type. We are equally frank to say that it would be a matter of exceeding difficulty for us to spell out a verdict and determine what damages Sibert has sustained, or the sum to which he is entitled, computed on the basis of the increase and on his share of the wool clipped after deducting from the total the loss for which he was bound. We must, however, insist there is evidence in the record on which the jury had a right to conclude he was entitled to recover the sum for which they rendered a verdict. The whole matter is hopelessly in conflict; it is uncertain, it is doubtful, but we see noth-

ing to indicate that the verdict resulted from prejudice or bias, and under these circumstances we do not feel at liberty to set aside the judgment entered thereon.

· We have undoubtedly gone farther and said more than perhaps was our legal duty, but we have done .it in deference to the earnestness and apparent honesty of counsel, and more to demonstrate the hypothesis on which we refuse to accept his conclusions than to attempt to support the verdict by an argument on the testimony.

Since we are wholly unable to discover a legal error which would permit us to reverse the judgment, we must affirm it.

*Affirmed.*